IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,            )
                                      )
          Plaintiff,            )
                                      )
vs.                                   )   Case No. CR-16-45-D
                                      )
DEARIAN DEON THOMPSON,                )
a/k/a Big Twin,                       )
                                      )
          Defendant.            )

**FINDINGS OF FACT, CONCLUSIONS
OF LAW, AND ORDER**

Before the Court is Defendant's Motion to Suppress Evidence [Doc. No. 45]. An evidentiary hearing was held June 28, 2016. Defendant DeArian Thompson personally appeared with appointed counsel, Andre Caldwell and Anthony Hendricks, and the government appeared through Assistant United States Attorney Ashley Altshuler. The Court accepted the parties' stipulation regarding Defendant's standing to challenge the search at issue, admitted Defendant's Exhibits 1-5 and Government's Exhibit 1, and heard testimony of Oklahoma City Police Officer Matthew Stephenson. Upon consideration of the evidence presented, the arguments of counsel, and the briefs previously submitted by the parties, the Court finds and concludes as follows:

FINDINGS OF FACT

During the afternoon of January 31, 2016, Officer Stephenson was one of several uniformed officers of the Oklahoma City Police Department ("OCPD") who responded to

a radio call for assistance at the Summer Oaks Apartments in the 5700 block of Northwest 16th Street in Oklahoma City, Oklahoma. The apartment complex is located in a high crime area that has criminal street gang activity. Its management had expressed concern about possible gang activity on the property, and had requested police patrols. Officer Stephenson is a five-year member of the police force and has worked in gang enforcement for one year. The Court finds Officer Stephenson's testimony regarding the circumstances and events pertinent to the Motion to be fully credible.

The radio call reported a subject running southbound away from the front area of the apartment complex, and described the subject as a black male wearing red and black clothing. These colors signified to Officer Stephenson a "bloods" gang affiliation. The officer making the call did not report any specific criminal activity, but said the subject had taken off running as soon as a marked police car entered the complex. Within a very short time after the call, Officer Stephenson arrived in a patrol car, exited the vehicle, and began running toward the area where he believed the subject might be.

The apartment complex consists of a number of separate two-story buildings, each containing multiple apartment units connected to adjoining buildings by sidewalks. When Officer Stephenson reached an intersection of sidewalks between buildings, he crossed paths with a person who matched the description of the subject. As the person ran past, Officer Stephenson had a good view of the runner's face and recognized him as Defendant's twin brother, co-defendant DeAndre Thompson, also known as "Little" or "Little Twin."

2

The Thompson twins were known to OCPD as gang members who had been involved in violent juvenile offenses and usually carried guns. Members of the gang enforcement unit, including Officer Stephenson, had been advised by a detective (Detective Grimes) on January 29, 2016, that the Thompson twins were wanted for questioning about a drive-by shooting on January 28, 2016, and perhaps an earlier shooting on December 31, 2015. Officer Stephenson understood the Thompson twins should be picked up whenever they were found because they had outstanding arrest warrants and were suspects in the drive-by shootings. Detective Grimes stated the Thompson twins had active felony warrants, but the officers later learned he was mistaken and each twin had multiple misdemeanor warrants.

After DeAndre Thompson ("DeAndre") and Officer Stephenson saw each other, DeAndre continued running away and Officer Stephenson chased him. Officer Stephenson was the closest to DeAndre, but another nearby officer, Officer McMacken, joined in the chase. As DeAndre reached building number 5728, Officer Stephenson saw him run into an apartment unit on the ground floor marked number 6 ("Apartment 6"). The main door to Apartment 6 faces a central breezeway and is located under a staircase; the outside wall of the unit has a sliding glass door and a window. DeAndre entered the front door and slammed it shut behind him. The men ran without stopping or pausing until DeAndre disappeared into Apartment 6. A very short time, as little as one minute, passed between the time Officer Stephenson heard the radio call and saw the door shut.

Officer Stephenson was not familiar with the apartment complex. He knew the Thompson twins usually stayed in the North Highlands area of Oklahoma City, and he thought DeAndre had run into a stranger's apartment to avoid police. Officer Stephenson also thought DeAndre might have encountered an open door and taken the opportunity to enter an apartment even if it was occupied. However, Officer Stephenson did not see whether the door of Apartment 6 was open when DeAndre reached it or whether there was another person inside. Officer Stephenson also did not see DeAndre carrying a firearm or weapon, but he knew from DeAndre's history that he was likely to be carrying a gun. Because of his unfamiliarity with the apartment complex, Officer Stephenson did not know whether there was a back door or window on the opposite end of the unit that DeAndre might use as an exit. From where he was stopped outside the front door, Officer Stephenson could not see whether DeAndre might be escaping through the side door or window.

Officer Stephenson found the front door of Apartment 6 was locked, and he immediately began to kick the door trying to breach it. Officer Stephenson could not get the door open, but Officer McMacken arrived shortly behind him and kicked in the door.[1] The two officers held their position and shouted commands for anyone in Apartment 6 to come out. Through the open door, the officers saw a handgun in plain view in the living room, but no people were visible. The officers heard someone say he was coming out, and then Defendant, also known as "Big Twin," emerged.

---

[1] The other officers present at the apartment complex were not near Apartment 6 at the time.

Officer Stephenson knew Defendant was not the person he had seen run into Apartment 6. Defendant stated he had been sleeping and someone had run into the apartment but he did not know who it was. Defendant complied with the officers' commands and was taken into custody on the arrest warrants. The officers then entered the apartment to search for DeAndre. DeAndre was found hiding in a closet of the master bedroom under some clothes; he was also taken into custody on his arrest warrants. The twins were transported to OCPD headquarters, where they were later interviewed by detectives.

## DEFENDANT'S MOTION

Defendant moves to suppress the physical evidence obtained from Apartment 6, as well as statements he later made to the detectives, on the grounds that the entry into Apartment 6 without a search warrant violated the Fourth Amendment, and his post-arrest statements were fruits of the illegal search. The government maintains that the warrantless entry was proper under a combination of "exigent circumstances" exceptions to the warrant requirement due to the particular facts encountered by the police officers at the Summer Oaks Apartments on January 31. The government asserts there was reasonable suspicion of criminal activity when a person dressed in gang colors ran from the officers in a high-crime area known for gang activity, and the suspicion turned into a "hot pursuit" when they recognized DeAndre and began chasing a person they believed was a felony suspect. In the government's view, the police officers had no opportunity in the short period of time that

elapsed to secure Apartment 6 and prevent DeAndre's escape, or potential harm to any occupants, without entering the apartment.

## CONCLUSIONS OF LAW

The government bears the burden to establish an exception to the warrant requirement of the Fourth Amendment, which prohibits police officers from entering a residence to execute an arrest warrant unless they reasonably believe the subject lives there and is present, or unless they have a search warrant. *See Payton v. New York*, 445 U.S. 573, 603 (1980); *Steagald v. United States*, 451 U.S. 204, 205-06 (1981); *United States v. Gay*, 240 F.3d 1222, 1226 (10th Cir. 2001) ("absent exigent circumstances or consent, law enforcement officers [cannot] legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant"). The government attempts to meet its burden in this case by showing the existence of exigent circumstances sufficient to justify a warrantless entry into Apartment 6. *See United States v. Aquino*, 836 F.2d 1268, 1271 (10th Cir. 1988) ("the government bears the burden of proving that sufficient exigency exists" to enter a home without a warrant); *see also United States v. Carter*, 360 F.3d 1235, 1241 (10th Cir. 2004).

In assessing whether the burden is satisfied, a court "should evaluate the circumstances as they would have appeared to prudent, cautious and trained officers." *See Carter*, 360 F.3d at 1241 (internal quotation omitted); *accord Armijo ex rel. Armijo Sanchez v. Peterson*, 501 F.3d 1065, 1071 (10th Cir. 2010). The question presented is whether "the circumstances, viewed objectively, justify the action. The officer's subjective motivation is

irrelevant." *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) (internal quotation, citation, and emphasis omitted). Further, under the Fourth Amendment's reasonableness standard, "a search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake." *See Heien v. N. Carolina*, 135 S. Ct. 530, 534 (2014).

"The Supreme Court has recognized several types of exigent circumstances that may justify a warrantless entry into a home, including the hot pursuit of a fleeing felon, the imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to police officers or other people inside or outside the home." *United States v. Thomas*, 372 F.3d 1173, 1177 (10th Cir. 2004) (citing *Minnesota v. Olson*, 495 U.S. 91, 100 (1990)). In *Olson*, 495 U.S. at 100-01, the Supreme Court affirmed a state supreme court's "fact-specific application" of this standard, which resulted in a determination that a warrantless entry into a house to apprehend a shooting suspect violated the Fourth Amendment, because the facts cited by the court did "not add up to exigent circumstances." In this case, the government relies on all but an imminent destruction of evidence to argue that the facts of this case do add up to exigent circumstances. *See* Govt's Resp. Br. [Doc. No. 51], p.4.

The exception for hot pursuit of a suspect was recognized by the Supreme Court in *United States v. Santana*, 427 U.S. 38, 43 (1976), which held that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." Although cases often refer to the exception as the hot pursuit of a fleeing

7

felon, neither the Supreme Court nor the Tenth Circuit has ever limited the exception to felony offenses. To the contrary, in surveying prior decisions to assess a qualified immunity defense to a civil rights claim in *Mascorro v. Billings*, 656 F.3d 1198 (10th Cir. 2011), the court noted that a warrantless entry into a home was found to be justified in *Bledsoe v. Garcia*, 742 F.2d 1237, 1241 (10th Cir. 1984), because a misdemeanor offense of absence without leave from military duty was a "serious offense" and "just below the general definition of a felony" based on a maximum possible punishment of one year in prison.[2]

Hot pursuit generally means "some sort of chase" and "occurs when an officer is in 'immediate or continuous pursuit' of a suspect from the scene of a crime." *See United States v. Jackson*, 139 F. App'x 83, 86 (10th Cir. 2005) (quoting *Santana*, 427 U.S. at 42-43, and *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984)). Research reveals no decision of the court of appeals or the Supreme Court, however, holding that the exception applies only when a law enforcement officer witnesses criminal activity and pursues the suspect for the purpose of making a warrantless arrest. An underlying purpose of the hot-pursuit exception – to prevent a suspect from evading arrest by retreating into a dwelling – seems equally well served under circumstances where an arrest warrant has been issued and officers are attempting to execute it, as under circumstances where no arrest warrant exists. Therefore,

---

[2] Numerous courts, including the Tenth Circuit, have held that police officers may enter the home of a person named in a misdemeanor arrest warrant in order to execute the warrant. *See United States v. Clayton*, 210 F.3d 841, 843-44 (8th Cir. 2000) (citing cases); *Atkins v. Sweetwater Cty. Sheriff's Office*, 463 F. App'x 751, 754 n.5 (10th Cir. 2012); *see also Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 689 (6th Cir. 2006) (misdemeanor warrant); *see also United States v. Gooch*, 506 F.3d 1156, 1159 (9th Cir. 2007) (bench warrant).

8

the Court concludes that the hot pursuit of a fleeing suspect who is the target of an arrest warrant may justify the entry into a dwelling to effectuate the arrest under appropriate circumstances.

"Threats to public safety are widely accepted as one of the exigent circumstances exceptions to the Fourth Amendment's warrant requirement." *United States v. Rhiger*, 315 F.3d 1283, 1288 (10th Cir. 2003). The Tenth Circuit has "previously applied the 'exigent circumstances' exception to warrantless entry when the circumstances posed a significant risk to the safety of a police officer or a third party." *United States v. Najar*, 451 F.3d 710, 717 (10th Cir. 2006). Following the Supreme Court's decision in *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006), the proper test is: "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is [sic] reasonable." *Najar*, 451 F.3d at 718.

Under the facts of this case, the Court finds it was objectively reasonable for OCPD officers to believe the immediate entry into Apartment 6 was justified by the exigent circumstances they encountered. The officers were responding to a situation in which an apparent gang member in a high-crime area fled from contact with law enforcement, and the subject was identified during the chase as a target of multiple arrest warrants. A law enforcement officer with knowledge of "the existence of an active arrest warrant, had an obligation to execute it." *Atkins*, 463 F. App'x at 754. Officer Stephenson also knew

9

DeAndre to be a suspect in recent drive-by shootings and a violent gang member who frequently carried a firearm. Once Officer Stephenson recognized DeAndre and the officers began pursuing him to execute an arrest warrant (which they honestly believed to be a felony warrant), the officers had a reasonable belief they needed to prevent DeAndre's escape and to protect themselves and any occupant of Apartment 6. In short, the combination of exigent circumstances included the hot pursuit of a fleeing suspect, the need to apprehend an arrestee, and an immediate need to protect the officers and the public from a suspect whom they knew to be potentially violent and likely armed.

The Court also finds the manner of the police officers' intrusion into Apartment 6 to be reasonable. They opened the front door of the apartment but did not enter, even though they saw a handgun in plain sight, until Defendant had responded to their commands to exit and confirmed that someone had taken cover inside. Using procedures appropriate to the circumstances, the officers took control of Defendant and conducted only a limited search necessary to locate DeAndre. The Court rejects Defendant's position that the officers should have waited outside Apartment 6 rather than continuing to pursue and apprehend DeAndre. Facing a potentially dangerous situation involving a suspect who had run into a presumably inhabited apartment to evade arrest, the officers were entitled to take immediate action to locate DeAndre and take him into custody.

The Supreme Court has repeatedly "instructed that reasonableness 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision

of hindsight' and that '[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving.'" *Ryburn v. Huff*, 132 S. Ct. 987, 992 (2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). Here, judged from the proper perspective of reasonable officers forced to make a split-second decision in response to a rapidly unfolding chain of events, the officers' belief that an immediate entry was necessary to apprehend DeAndre was completely reasonable.

## ORDER

For the above reasons, Defendant's Motion to Suppress Evidence [Doc. No. 45] is DENIED.

DATED this 13th day of July, 2016.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE